Citation Nr: 1536766 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 09-15 332 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the right lower extremity.

2. Entitlement to an initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the left lower extremity.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J.N. Moats, Counsel



INTRODUCTION

The Veteran served on active duty from August 1972 to July 1979.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2010 and May 2011 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

Specifically, in the July 2010 rating decision, the RO granted service connection for radiculopathy of the left lower extremity and assigned a noncompensable disability rating, effective April 1, 2010. In a May 2011 rating decision, the RO increased the disability rating for radiculopathy of the left lower extremity to 10 percent, and granted entitlement to service connection for right lower extremity radiculopathy and assigned a disability rating of 10 percent, both effective August 9, 2010. 

In a November 2011 rating decision, the RO continued the 10 percent disability ratings for the Veteran's radiculopathy of the right and left lower extremities. In a December 2012 rating decision, the RO awarded an earlier effective date of April 1, 2010, for the 10 percent initial rating for the Veteran's radiculopathy of the left lower extremity.

In a December 2013 decision, the Board granted separate 20 percent ratings for radiculopathy of each lower extremity. In a rating decision that same month, the RO effectuated the Board's grant and assigned a 20 percent disability rating for radiculopathy of the right lower extremity, effective August 9, 2010; and a 20 percent disability rating for radiculopathy of the left lower extremity, effective April 1, 2010.

The Veteran then appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a June 2014 Order, the Court granted a June 2014 Joint Motion for Partial Remand (Joint Motion) by the parties before the Court: to vacate the Board's decision to the extent that it denied entitlement to (1) an initial disability rating in excess of 20 percent for radiculopathy of the right lower extremity, and (2) an initial disability rating in excess of 20 percent for radiculopathy of the left lower extremity; and remanded the case to the Board for further action consistent with the Joint Motion.

In November 2014, the Board remanded the case for further development in compliance with the Joint Motion. While on remand, a March 2015 rating decision awarded 40 percent ratings for radiculopathy of each lower extremity, effective January 28, 2015, the date of a VA examination that showed an increase in the severity of such disabilities. As the Agency of Original Jurisdiction's (AOJ's) actions do not constitute a full grant of the benefit sought, and the Veteran has not expressed satisfaction with the increased ratings, the issues remains on appeal. See AB v. Brown, 6 Vet. App. 35, 39 (1993). Furthermore, the Board has phrased the issues on appeal to reflect the fact that a "staged" rating is in effect. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The Board notes that, after the issuance of the March 2015 supplemental statement of the case, additional evidence was associated with the record that has not considered by the AOJ. However, in a July 2015 brief, the Veteran's representative waived AOJ consideration of such evidence. 38 C.F.R. § 20.1304(c) (2015). Thus, the Board may properly consider the newly received evidence. 

The issues of entitlement to service connection for depression and erectile dysfunction have been raised by the record in an April 2015 claim. In a June 2015 rating decision, the AOJ deferred adjudication of these matters. However, to date, they still have not been adjudicated by the AOJ. Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).


FINDINGS OF FACT

1. Prior to January 28, 2015, the Veteran's radiculopathy of the right lower extremity approximated no more than moderate incomplete paralysis of the sciatic nerve. 

2. From January 28, 2015, the Veteran's radiculopathy of the right lower extremity approximated no more than moderately severe incomplete paralysis of the sciatic nerve. 

3. Prior to January 28, 2015, the Veteran's radiculopathy of the left lower extremity approximated no more than moderate incomplete paralysis of the sciatic nerve. 

4. From January 28, 2015, the Veteran's radiculopathy of the left lower extremity approximated no more than moderately severe incomplete paralysis of the sciatic nerve. 


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. Part 4, including §§ 4.7, 4.124a, Diagnostic Code 8520 (2015).

2. The criteria for an initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the left lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. Part 4, including §§ 4.7, 4.124a, Diagnostic Code 8520 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim. Accordingly, notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, 
followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

In the instant case, the Veteran's appeal arises from disagreement with the initial evaluations assigned following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

Next, VA has a duty to assist the Veteran in the development of the claims. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's VA treatment records, Social Security Administration (SSA) records, and VA examination reports. Moreover, the Veteran's statements in support of the claims are of record. The Board has carefully reviewed such statements and concludes no available outstanding evidence has been identified. 

The Board observes that a February 2015 private Disability Benefits Questionnaire for the Back indicated that the Veteran did not have any objective findings due to radiculopathy not addressed in the physical examination and then wrote a note "pending NCV [nerve conduction velocity] testing." However, there is no further indication that such NCV was done. The Veteran has not identified any further testing or given any indication that additional relevant evidence is outstanding. It is the claimant's responsibility to properly identify pertinent evidence so that VA may assist him in supporting his claim. The VA's 'duty' is just what it states, a duty to assist, not a duty to prove a claim with the claimant only in a passive role. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1993). Nor is the VA required to search for evidence which, even if obtained, would make no difference in the result. See Colvin v. Derwinski, 1 Vet. App. at 174. 

In this regard, prior electromyography (EMG)/NCV testing has been done and associated with the record and clearly shows a diagnosis of radiculopathy of both lower extremities. However, to rate the severity of radiculopathy, objective clinical findings must be accomplished. As discussed further below, a VA examination was done in January 2015 that is adequate for appellate review and clearly addresses the severity of the Veteran's radiculopathy for both lower extremities. Moreover, in order to obtain a higher rating during this period, there must be objective findings of marked muscular atrophy or no active muscle movement, which have not been shown in the contemporaneous clinical evidence. In sum, if another NCV study was in fact done, it would not be relevant to the current claim and thus, the Board finds no prejudice to the Veteran in the issuance of this decision. See Bernard v. Brown, 4 Vet. App. 384, 393 (1993).

The Board has also perused the remaining medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claims. 

Additionally, the Veteran was afforded VA examinations in April 2011 and January 2015 to evaluate the severity of his service-connected radiculopathy of the lower extremities. The Board finds that the VA examinations are adequate because, as discussed below, they based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and because they provide detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). Furthermore, the Veteran has not asserted, and the evidence does not show, that his symptoms have materially worsened since the most recent January 2015 evaluation. See 38 C.F.R. §§ 3.326, 3.327 (reexaminations will be requested whenever VA determines there is a need to verify the current severity of a disability, such as when the evidence indicates there has been a material change in a disability or that the current rating may be incorrect.); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). The Board accordingly finds no reason to remand for further examination. 

Finally, the Board finds that there was substantial compliance with the November 2014 remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). 

In particular, the Board in November 2014 directed the AOJ to obtain copies of all outstanding VA or private treatment records and notify the Veteran that he may submit statements from him and others fully describing the various symptoms and impairment resulting from his service-connected radiculopathy of the right and left lower extremities. VA treatment records dated to April 2015 have been associated with the Veteran's VBMS record. Moreover, in a December 2014 letter, the AOJ requested that the Veteran submit any information and/or authorization concerning any private treatment as well as statements concerning his symptoms. The Veteran did not identify any further providers. 

Further, the AOJ was also directed to schedule the Veteran for a VA examination. As noted above, the Veteran was afforded a VA examination in January 2015 that is adequate for appellate review. Accordingly, the Board finds that there has been substantial compliance with the November 2014 Board remand directives and, therefore, no further remand is necessary. See Stegall, supra; D'Aries, 22 Vet. App. at 104 (2008).

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Analysis

The Veteran is seeking initial higher ratings for his radiculopathy of the right and left lower extremities. Disability evaluations are determined by the application of the Schedule For Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 
 
In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, as in the instant case, the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999). Further, as in the instant case, at the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Id. at 126.

The Veteran's radiculopathy of the right and left lower extremities has been rated under 38 C.F.R. § 4.124a, Diagnostic Code 8520 for paralysis of the sciatic nerve. Under this code, a 20 percent rating is assigned for moderate incomplete paralysis of the sciatic nerve; a 40 percent rating is assigned for moderately severe incomplete paralysis; and a 60 percent rating is assigned for severe incomplete paralysis, with marked muscular atrophy. A maximum 80 percent rating is assigned for complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a, DC 8520.

The Board notes that the terms "mild," "moderate," "moderately severe," and "severe" are not defined in the rating schedule; rather than applying a mechanical formula, VA must evaluate all the evidence to the end that its decisions are equitable and just. 38 C.F.R. § 4.6 (2015). Although a medical examiner's use of descriptive terminology such as "mild" is an element of evidence to be considered by the Board, it is not dispositive of an issue. The Board must evaluate all evidence in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2 , 4.6.

The Board has thoroughly reviewed the evidence of record. An August 2009 VA spine examination shows that the Veteran reported pain radiating from his spine down his left hip. However, sensory, motor, and reflex examinations of the lower extremities were all normal.

In January 2010, the Veteran reported paresthesias in the bilateral lower extremities. A February 2010 VA EMG test revealed moderately severe lumbar radiculopathy on the left side of L4-5. A March 2010 VA physical therapy consultation report shows that the Veteran complained of chronic radicular symptoms in the left lower extremity, and weakness in both extremities, which was worse in the left. However, strength to testing was 5/5 on both sides, but straight leg raising was positive on the left. Light touch sensation was intact on both sides, but he complained of hypersensitivity long the L5 dermatome on the left. Follow up VA and private treatment records continued to show reports of bilateral leg pain and an assessment of bilateral radiculopathy due to lumbar spine disorder. 

April 2011 VA spine and peripheral nerves examinations showed that, while the Veteran denied any leg or foot weakness, on examination he had decreased pain and light touch sensations in the L4/5 dermatomes on both sides, and reflex and motor examinations were normal. The examiner diagnosed bilateral leg radiculopathy, with nerve dysfunction, neuritis, and neuralgia. The examiner noted that pain caused severe effects on exercise, moderate effects on chores, driving and recreation, and mild effects on bathing and dressing. The Veteran's muscle tone was normal with no atrophy.

In a July 2012 statement, the Veteran indicated that a new examination was not necessary as the prior examination was less than a year old. However, VA treatment records continued to show complaints of leg pain and an unsteady gait. 

A November 2014 VA spine examination showed that the Veteran again reported radiating pain down both legs along the side and then coming back up to his groin. Muscle strength testing was normal. There was no evidence of muscle atrophy. Deep tendon reflexes were 1+. However, sensory examination was normal. The Veteran was unable to perform straight leg raising test and had mild signs or symptoms of paresthesias and/or dysesthesias and numbness in both lower extremities. The examiner found that the severity of the Veteran's radiculopathy was mild. The Veteran reported that he was in a sedentary occupation and had a special chair for lumbar support. However, he could only sit for 30 to 40 minutes before he had to get up and stretch and walk around. Sometimes the time period was less when weather was cold. He used a cane to brace himself and push himself up. The examiner did remark that she was unable to adequately evaluate the Veteran's radicular symptoms and therefore a diagnosis was not rendered. The Veteran's gait was antalgic due to back pain. 

Although the examiner was not able to provide a diagnosis, the examination report does include clinical findings that allow for rating the Veteran's radiculopathy. In this regard, reflex, sensory, and strength was accomplished and recorded. Moreover, symptoms pertaining to the Veteran's radiculopathy were also documented. 

On remand, the Veteran was afforded a VA neurological and muscle injuries examination on January 28, 2015. The Veteran reported leg weakness since 2010. On muscle injuries examination, the Veteran had less than normal strength in the lower extremities with 4/5. However, there were no objective findings of muscle atrophy. On neurological examination, the Veteran reported increased pain and numbness in the lower legs. He indicated that he had difficulty driving, walking, standing, and sitting for prolonged periods. At this time, the Veteran reported severe paresthesias and numbness in the lower extremities. Again, the Veteran had less than normal strength in the lower extremities with 4/5. However, reflexes were normal. Sensation was decreased in both lower extremities. Gait was abnormal due to back. The examiner found that the Veteran had moderately severe incomplete paralysis of the sciatic nerve. The Veteran used a cane constantly. There were no other pertinent physical findings, complications, conditions, signs or symptoms. The examiner observed that an EMG in 2013 was abnormal. 

The examiner again noted that the Veteran could not stand, walk or sit for prolonged periods of time. He must change position every 7 minutes. He used a cane to ambulate and could not do any heavy lifting, twisting, carrying, kneeling, squatting, climbing, household chores or yardwork. He drove for short periods of time. The examiner concluded that he had weakness in both lower legs, but no atrophy. There was no change in diagnosis. 

The following month, in February 2015, the Veteran submitted a Disability Benefits Questionnaire for the Back prepared that month by a private physician. The examiner observed diminished muscle strength of 2/5 on hip flexion, 3/5 on knee flexion and extension and 4/5 on foot abduction and adduction on both legs. However, again, the examiner found no muscle atrophy present and reflexes were normal. The examiner also indicated that the Veteran had a normal gait. Sensory examination was also normal. Straight leg raising testing was positive. The Veteran did have radiculopathy, which he reported consisted of constant, severe pain as well as numbness and paresthesias and/or dysesthesias. The examiner opined that the Veteran's radiculopathy was severe. The Veteran essentially reported the same impact on employment as the prior VA examinations. However, the examiner did not specifically opine on the severity of the Veteran's paralysis of his sciatic nerve condition. 

As discussed above, the Veteran's radiculopathy of the right and left lower extremities has been rated as 20 percent disabling each prior to January 28, 2015, and 40 percent disabling each from January 28, 2015. Thus, the Board must determine whether a rating in excess of 20 percent is warranted prior to January 28, 2015 and whether a rating in excess of 40 percent is warranted thereafter. 

Prior to January 28, 2015

The Board must initially determine whether an initial rating in excess of 20 percent is warranted for radiculopathy of either leg prior to January 28, 2015. Based on the medical evidence of record, the Board finds that the Veteran's disability picture prior to January 28, 2015 is consistent with moderate incomplete paralysis of the sciatic nerve. In this regard, the December 2014 VA examiner characterized the Veteran's radiculopathy picture as mild and sensation as well as strength was intact at this examination. Importantly, strength testing prior to January 28, 2015 was consistently normal. The first objective evidence of diminished strength was at the January 2015 VA examination. 

As such, because the disabilities were wholly sensory in nature prior to this date, a disability rating reflecting a moderate degree of impairment is at most warranted. See 38 C.F.R. § 4.124a. The Board recognizes that the February 2010 EMG revealed moderately severe radiculopathy on the left side and the Joint Motion specifically pointed out that the Veteran reported lower leg weakness in March 2010, which would indicate that the disability was not wholly sensory in nature. Nevertheless, objective clinical findings at that time clearly document that strength was 5/5 throughout. Moreover, subsequent VA examination reports prior to January 28, 2015 also showed no objective findings of diminished strength. In sum, although the Veteran reported leg weakness during this period, the objective clinical findings clearly document no diminished strength. 

In this regard, while the Veteran is competent to report weakness in the bilateral lower extremities, he is not competent, as a lay person to evaluate whether such weakness is attributable to an impairment in a nerve or muscle. Specifically, such a finding requires medical expertise as it involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship, i.e., knowledge of the nervous system and the impact that a damaged nerve has on muscle strength. Moreover, the diagnosis of muscle weakness requires the administration and interpretation of clinical tests. As such, the question of the presence of reduced muscle strength as a result of the Veteran's radiculopathy may not be competently addressed by lay evidence, and the Veteran's own opinion in this regard is nonprobative evidence. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions).

Accordingly, the Veteran's disabilities of the lower extremities prior to January 28, 2015 were consistent with no more than moderate incomplete paralysis of the sciatic nerve, warranting the 20 percent ratings under Diagnostic Code 8520. 

From January 28, 2015

The Board now turns to whether a rating in excess of 40 percent is warranted for either extremity from January 28, 2015. Based upon consideration of the evidence, the Board finds that ratings in excess of 40 percent are not warranted for radiculopathy of the right and/or left lower extremities for such portion of the appeal period. Although diminished strength and sensation have been documented, there have been no objective findings of marked muscular atrophy or complete paralysis to warrant a higher rating. Significantly, the January 2015 VA examiner characterized the Veteran's right and left leg disability picture as moderately severe, which is the criterion for a 40 percent rating. Further, on a muscle examination, there were no findings of muscle atrophy to warrant a higher rating. Likewise, although the February 2015 private DBQ submitted by the Veteran characterized the Veteran's radiculopathy as severe, he also found no evidence of muscle atrophy. As such, the Board finds that the Veteran's disabilities are consistent with a moderately severe disability picture warranting the current 40 percent ratings from January 28, 2015 under Diagnostic Code 8520 for moderately severe incomplete paralysis of the sciatic nerve of both lower extremities. 

Other Considerations

The Board acknowledges that the Veteran, in advancing this appeal, believes that the disability on appeal has been more severe than the assigned disability ratings reflect. In this regard, he is competent to report observable symptoms. Layno v. Brown, 6 Vet. App. 465 (1994). In this case, however, the competent medical evidence offering detailed specific specialized determinations pertinent to the rating criteria are the most probative evidence with regard to evaluating the pertinent symptoms for the disability on appeal; the medical evidence also largely contemplates the Veteran's descriptions of symptoms. In this regard, the Board notes that in a statement dated in May 2011 and his substantive appeal dated in February 2013, the Veteran specifically requested 20 percent disability rating for his radiculopathy of both lower extremities. In sum, the lay evidence has been considered together with the probative medical evidence clinically evaluating the severity of the pertinent disability symptoms. 

The Board has considered whether further staged ratings under Fenderson, supra, are appropriate for the Veteran's service-connected radiculopathy of both lower extremities; however, the Board finds that, with the exception of the increase in severity observed at the January 2015 VA examination, the Veteran's symptomatology had been stable prior to January 28, 2015, and given the lack of objective findings of muscular atrophy thereafter as discussed above, a higher rating is not warranted from that date. Therefore, assigning staged ratings for such disability is not warranted. 

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id.

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected radiculopathy of the right and left lower extremities with the established criteria found in the rating schedule. The Board finds that the Veteran's symptomatology is fully addressed by the rating criteria under which such disability is rated. In this regard, the Veteran's assigned disability ratings contemplate his current neurological deficits, including pain, functional limitations, and numbness as well as his more recent leg weakness. In sum, the Veteran's symptoms, and their resulting impairment, are contemplated by the rating schedule. 

The Board notes that, pursuant to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, in this case, even after affording the Veteran the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there is no additional impairment that has not been attributed to a specific, rated disability. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions.

Therefore, the Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology of his service-connected radiculopathy of both lower extremities. As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. In this regard, there is nothing exceptional or unusual about the Veteran's low back disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115. Accordingly, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). 

The Court has held that a request for a total disability rating based on individual unemployability (TDIU), whether expressly raised by a Veteran or reasonably raised by the record, is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or, if the disability upon which entitlement to TDIU is based has already been found to be service-connected, as part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In this case, there has been no allegation or evidence of unemployability. The Veteran has reported that he has worked full time for over 20 years. Accordingly, the question of entitlement to TDIU has not been reasonably raised by the record.

In conclusion, Board finds that the preponderance of the evidence is against initial higher disability ratings for radiculopathy of the right and left lower extremities at any point during the course of the appeal; thus, the benefit of the doubt doctrine is not applicable and the claims for higher ratings must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.


ORDER

An initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the right lower extremity is denied. 

An initial rating in excess of 20 percent prior to January 28, 2015, and in excess of 40 percent thereafter for radiculopathy of the left lower extremity, is denied.



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs